**COMMONWEALTH**
vs.
**Jay SNOW**

**Nos. 81-111-115; 82-197**

Superior Court/Middlesex County
Commonwealth of Massachusetts

**April 30, 1982**

John McEvoy, Asst. D.A., Middlesex County, counsel for plaintiff.
Mark E. Schreiber, counsel for defendant.

## MEMORANDUM OF DECISION ON DEFENDANT SNOW'S MOTION TO SUPPRESS EVIDENCE AND FOR AN EVIDENTIARY HEARING ON THE VERACITY OF THE WARRANT AFFIDAVIT

In the above-captioned case the defendant is charged with five counts of possession with intent to distribute controlled substances and one count of unlawful possession of a hypodermic syringe, all arising out of a search of his dwelling pursuant to a search warrant issued 1/15/81.

Defendant has filed the present motion alleging broadly: (1) that the affidavit in support of the search warrant does not show probable cause, and (2) that the affidavit contained false or reckless relevant and material statements.

The motion was heard on April 20, 1982, on the papers and a stipulation by the Commonwealth, referred to in part 3 below.

1. **The Affidavit.** The affidavit in support of application for search warrant, dated January 15, 1981, by Police Officer Paul J. Whelan, reads:

"Information from Natick Police Officer Edward J. Deeley that a reliable informant stated to him that their drug supply came from an apartment at 176 North Main St., from the man that lives there identified as Jay F. Snow. Date of birth, 6/28/58. The informant stated that Snow deals and sells marijuana, hashish and cocaine and that the informant has purchased and obtained narcotics at this address for several weeks. Also from my personal knowledge of Jay F. Snow being involved in criminal activities in the past."

2. **Probable Cause.** Defendant argues that the affidavit did not show the informant was reliable or had reliable information, does not clearly say who identified the defendant, who supplied his middle initial, or his birthdate, nor does it state when the purchases by the informant were made. The reference to defendant's prior activity could be very stale and minor. Defendant cites **Commonwealth v. Fleurant,** 2 Mass. App. Ct. 250, 253 for the proposition that statements made against penal interest alone are not sufficient.

The Commonwealth's argument, which the court finds more persuasive, is that the affidavit should be examined with a common-sense, non-technical, ungrudg-

ing and positive attitude, allowing a certain leeway to encourage the police to use the warrant procedure, and giving some credit to the fact that there were determinations made below of probable cause, **Commonwealth v. Norris,** 6 Mass. App. Ct. 761, 763 (1978), 383 N.E.2d 534, 537-8.

So interpreting the affidavit, the informant could have been a public-spirited citizen, who did not provide the information in exchange for money or other consideration. The magistrate could have so inferred.

Finally, the admission by the informant could reasonably have been interpreted to be recent information and against the informant's penal interest. See, **Commonwealth v. Higginbotham,** Mass. App. Ct. Adv. Sh. (1981) 155, 156, 415 N.E.2d, 229, 232 "statements received from a participant in a criminal enterprise 'carry their own indicia of credibility - sufficient at least to support a finding of probable cause to search'."

Defendant claims that the information was double hearsay coming from Officer Deeley, but policemen are commonly given more credibility, and all the information known by all officers engaged in a particular investigation can probably be aggregated. **Commonwealth v. Cruz,** 373 Mass. 676, 684-685 (1977). **Commonwealth v. Wooden,** 13 Mass. App. Ct. 417, 422 (1982).

The defendant properly argues that the concluding sentence of the affidavit containing generalized statements of defendant's prior criminal activity can be given no weight.

3. **False or Reckless Misstatement.** Defendant claims that the affidavit contains false or reckless misstatements of fact, material, relevant without which probable cause would not have been shown.

The sole basis for this allegation is a newspaper report contained in the Middlesex News of Saturday, January 17, 1981, attached to defendant's affidavit, and which the Commonwealth stipulated was indeed published reading: "Natick police confiscated several bottles of pills, hypodermic syringes and other drug paraphenalia during a Thursday night raid at a North Main Street home. According to Police Chief John Arena, police officers obtained a warrant to search 176 North Main Street **as a result of a drug overdose reported at that address last Sunday night.**" (emphasis added).

Defendant urges that this is a sufficient substantial preliminary showing that a false or reckless statement was made as to require an evidentiary hearing under **Franks v. Delaware,** 438 U.S. 154.

The short answer to defendant's argument is that the court does not find that the mere fact that something appears in the newspaper is equivalent to a substantial showing of its truth. The defendant did not submit an affidavit from any reporter verifying that the Chief had indeed made the statements attributed to him. It is well known that newspapers, particularly suburban newspapers, operate with stringers (part-time nonprofessionals) and other reporters, whose work is transmitted in various ways to editors who perform various sorts of revision. I do not believe that a clipping from a newspaper without more is a sufficiently substantial showing. Otherwise the court might be driven to conduct evidentiary hearings everytime there was a misstatement in the newspaper, an ominous possible addition to our already heavy burden.

Secondly, it is not clear that the Chief was actively engaged in the investigation or had been fully informed of all the activities pursuant thereto.

Finally, the statements are not inconsistent. It is quite possible that there was an overdose at the address, or as argued by counsel for the Commonwealth (without supporting affidavits) closely associated with that address the preceding Saturday, which resulted in increased police activity resulting in obtaining from the informant the information about the source of supply, resulting in the affidavit, the warrant, and the search.

In **Franks v. Delaware,** the statements were quite irreconcilable, the affidavit stating that the affiant had spoken to two people who denied having spoken to such officer. This is certainly a much sharper contradiction than that argued here.

Furthermore, in **Franks** at page 171 the Court wrote "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits of sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence of innocent mistakes are insufficient." Here defendant's showing did not measure up to the standard.

Finally, the motivation for seeking a warrant is not necessarily inconsistent with the showing of probable cause and an affidavit actually submitted to obtain one.

In **Commonwealth v. Douzanis,** Mass. Adv. Sh. (1981) 2005, 2008-2009, 425 N.E.2d 326, 330 (1981) the Supreme Judicial Court held that something more than a bare assertion that the affiants fabricated an informant's report or the very existence of an informant is required for a **Franks**-type hearing.

4. **Order.** The motion is denied.

**Robert J. Hallisey**
**Justice of the Superior Court**